O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| JOANN AMBROSE, | Case No. SACV 12-00954-MLG |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | |
| Defendant. | |

Plaintiff Joann Ambrose seeks judicial review of the Commissioner's final decision denying her application for disability insurance benefits ("DIB"). For the reasons stated below, the decision of the Commissioner is affirmed and the matter is dismissed with prejudice.

**I.   Background**

Plaintiff was born on May 25, 1950, and was 57 years old at the time she filed her application for benefits. (Administrative Record ("AR") at 187.) She has a high school education and has relevant work experience as a medical biller and medical billing manager. (AR at 168, 173.) Plaintiff filed her DIB application on February 12, 2008, alleging disability beginning January 10, 2003, due to degenerative disc disease

of the cervical spine, right and left shoulder pain, left hand numbness, and degenerative joint disease of the right knee. (AR at 156-57, 167.)

Plaintiff's application was denied initially on April 30, 2008 and upon reconsideration on August 29, 2008. (AR at 83-87, 89-94.) An administrative hearing was held on May 11, 2010, before Administrative Law Judge ("ALJ") Wendy Weber. Plaintiff, represented by counsel, testified, as did a medical expert and a vocational expert. (AR at 49-80.)

On July 10, 2010, the ALJ issued an unfavorable decision. (AR at 34-42.) The ALJ found that the medical evidence established that Plaintiff suffered from the following severe impairments: multi-level degenerative disc disease of the cervical spine without radiculopathy, bulging discs in the lumbar spine, rotator cuff tear of the left shoulder, tendinitis of the right shoulder, and chondromalacia and degenerative joint disease of the right knee. (AR at 36.) The ALJ determined that Plaintiff's impairments did not meet, and were not medically equal to, one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. (AR at 37.) The ALJ further found that Plaintiff retained the following residual functional capacity ("RFC"):

> lift and carry twenty pounds occasionally and ten pounds frequently with the right upper extremity but only carry ten pounds occasionally and less than ten pounds frequently with the left upper extremity; sit for six hours and stand or walk for six hours during an eight-hour work day; only occasionally perform pedal operations with the right lower extremity; never climb ladders, ropes, or scaffolds; only occasionally climb ramps and stairs; only occasionally stoop, crouch, or kneel; never walk on uneven terrain; never reach at or above

```
            shoulder-level or perform forceful grasping or torquing with
            the left upper extremity; and only frequently flex, extend, or
            move side-to-side with the neck.
```
(AR at 37.)

The ALJ concluded that Plaintiff was capable of performing her past relevant work as a medical coder/biller and office manager, and therefore Plaintiff was not disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 416.920(f). (AR at 30-31.)

On May 1, 2012, the Appeals Council denied review. (AR at 1-4.) Plaintiff then timely commenced this action for judicial review. On December 21, 2012, the parties filed a Joint Stipulation ("Joint Stip.") of disputed facts and issues. Plaintiff contends that the ALJ erred by failing to: (1) perform a proper credibility analysis; (2) consider the statement of Plaintiff's husband; and (3) give proper weight to the opinion of three of Plaintiff's treating physicians. (Joint Stip. at 2-3.) Plaintiff seeks reversal of the Commissioner's denial of her application and payment of benefits or, in the alternative, remand for a new administrative hearing. (Joint Stip. at 31.) The Commissioner requests that the ALJ's decision be affirmed. (Joint Stip. at 31-32.)

**II.   Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's decision must be upheld unless "the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1990); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means

such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006). It is more than a scintilla, but less than a preponderance. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute its judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

**III. Discussion**

    **A.   The ALJ Properly Evaluated Plaintiff's Subjective Symptom Testimony**

    Plaintiff contends that the ALJ erred by failing to provide clear and convincing reasons for discounting her subjective symptom testimony. (Joint Stip. at 3.) To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the alleged pain or other symptoms. *Lingenfelter*, 504 F.3d at 1036. "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of

objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). To the extent that an individual's claims of functional limitations and restrictions due to alleged pain is reasonably consistent with the objective medical evidence and other evidence in the case, the claimant's allegations will be credited. SSR 96-7p, 1996 WL 374186 at *2 (explaining 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).[1]

Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for discrediting a claimant's complaints. *Robbins*, 466 F.3d at 883. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick*, 157 F.3d at 722 (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 & n.8 (9th Cir. 1996). The ALJ may also consider an unexplained failure to seek treatment or follow a prescribed course of treatment and employ other ordinary techniques of credibility evaluation. *Id*. (citations omitted).

Plaintiff testified at the administrative hearing to the following symptoms and functional limitations: she has difficulty looking up or

---

[1] "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy .... Although SSRs are not published in the federal register and do not have the force of law, [the Ninth Circuit] nevertheless give[s] deference to the Secretary's interpretation of its regulations." *Bunnell*, 947 F.2d at 346 n.3.

down or sitting because of pain in her neck; she can only sit or stand for about 15 minutes and walk for 10 minutes; she can lift only about five pounds; she has stiffness and pain in her neck which radiates into her shoulder, back and hand; she has pain in her knees; she has trouble sleeping at night because of the pain; and she must lie down or recline several times a day for up to a third of the day to relieve the pain in her knees. (AR at 53-62.)

The ALJ found that Plaintiff's medical impairments could reasonably be expected to produce the alleged symptoms. (AR at 41.) The ALJ was therefore required to provide specific, clear and convincing reasons for rejecting Plaintiff's subjective allegations of pain and functional limitations. The ALJ provided various reasons for discrediting Plaintiff's testimony, each of which is fully supported by the record. The ALJ noted that Plaintiff's daily activities were inconsistent with her allegations of severe pain and serious functional limitations. Plaintiff reported being able to drive, shop, do some light chores and attend to her personal grooming. In addition, as noted by the ALJ, Plaintiff indicated to the examining orthopedic specialist, Dr. Henry E. Bruce, M.D., that "she was able to do all activities of daily living and personal grooming," although she needs to pace her work and avoid heavy lifting. (AR at 40, citing AR at 709.) Although a claimant "does not need to be 'utterly incapacitated' in order to be disabled," *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001), the ability to perform certain activities of daily life can support a finding that the claimant's reports of his or her impairment are not fully credible. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009); *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that the claimant's ability to "take care of her personal needs, prepare easy

meals, do light housework and shop for some groceries ... may be seen as inconsistent with the presence of a condition which would preclude all work activity") (citing *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)).

The ALJ also noted that Plaintiff's claim that she could not walk for more than 10 minutes at a time was inconsistent with recent physical therapy reports, which indicated that Plaintiff had only a mild limitation in her ability to walk, and with the opinion of Plaintiff's primary care physician, Dr. Carmela Yacoob, M.D., that Plaintiff could walk frequently, defined as 3-6 hours out of an eight-hour work day. (AR at 40-41, citing AR at 650, 734.) *See Smolen*, 80 F.3d at 1284 (the ALJ may use ordinary techniques of credibility evaluation, such as considering inconsistent statements and whether the claimant has been candid).

The ALJ also noted that Plaintiff testified that she takes over the counter pain relief medication and herbal supplements, which significantly help her symptoms. (AR at 40, citing AR at 55, 199, 709.) Plaintiff's testimony that her symptoms are greatly alleviated with over the counter pain medication and herbal supplements undermines her statements of disabling pain and serious limitations. *See Smolen*, 80 F.3d at 1284; *see also Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits.").

It is the responsibility of the ALJ to determine credibility and resolve conflicts or ambiguities in the evidence, *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and a reviewing court may not second-guess the ALJ's credibility determination when it is supported by

substantial evidence in the record, as here. *See Fair,* 885 F.2d at 604. Accordingly, it was reasonable for the ALJ to rely on the reasons stated above in finding that Plaintiff's subjective testimony regarding the severity of her symptoms was not wholly credible.

### B. The ALJ Properly Considered the Statements of Plaintiff's Husband

Plaintiff contends that the ALJ improperly failed to discuss the lay witness testimony offered by her husband. (Joint Stp. at 13.) On June 18, 2008, Plaintiff's husband, Donald G. Ambrose, Jr., filled out a "Function Report - Adult - Third Party" regarding his knowledge about Plaintiff's daily activities and abilities. Mr. Ambrose reported the following: Plaintiff wakes up at night with pain; he has to help her dry her hair; she can only perform light household chores and must take frequent breaks; she is limited in lifting, standing, reaching, walking, sitting, and using her hands; she can only lift light objects; and she can walk for only about 10 minutes at a time. (AR at 202-209.)

A lay witness can provide testimony about Plaintiff's symptoms and limitations. *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). Appropriate reasons include testimony unsupported by the medical record or other evidence and inconsistent testimony. *Lewis*, 236 F.3d at 512.

Here, the ALJ cited Plaintiff's husband's report, noting that Plaintiff's claims of restricted daily activities, which were corroborated by her husband's report, were contradicted by her

statements to Dr. Bruce that she was able to perform all activities of daily living. (AR at 40, citing AR at 202-206.) "[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citing *Valentine v. Comm.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony"). Because the ALJ appropriately rejected Petitioner's statements regarding her daily activities, it was proper for the ALJ to similarly reject Plaintiff's husband's statements as not fully credible because they were substantially similar to Plaintiff's.

Furthermore, unlike lay *testimony*, there is no controlling precedent requiring an ALJ to explicitly address *written* statements, such as the "Function Report - Adult - Third Party" form in this case. Indeed, it is clear that an ALJ is not required "to discuss every piece of evidence." *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003); *see also Molina*, 674 F.3d at 1114 ("We have not, however, required the ALJ discuss every witness's testimony on a individualized, witness-by-witness basis."). In this case, the ALJ appropriately considered the written statement provided by Plaintiff's husband.

**C. The ALJ Accorded Appropriate Weight to the Opinions of Plaintiff's Treating Physicians**

Plaintiff contends that the ALJ erred in failing to give controlling weight to the opinions of her treating physicians, Drs.

Wesley Nottage, M.D., Michael Luciano, M.D., and Carmela Yacoob, M.D. (Joint Stip. at 17-30.) For the reasons discussed below, Plaintiff's contention is without merit.

**1.  Dr. Wesley Nottage**

On September 10, 2005, Dr. Nottage, an orthopedic surgeon, opined that "it seems more probable than not that [Plaintiff] would be incapable of returning back to her job duties as a billing manager ... providing the job could not be accommodated to avoid prolonged neck flexion." (AR at 256.) Plaintiff contends that the ALJ's failure to address this report was error because Dr. Nottage's opinion contradicts the ALJ's conclusion that Plaintiff was capable of returning to her past relevant work as a billing manager. (Joint Stip. at 17.)

An ALJ should generally accord greater probative weight to a treating physician's opinion than to opinions from non-treating sources. *See* 20 C.F.R. § 404.1527(d)(2). The ALJ must give specific and legitimate reasons for rejecting a treating physician's opinion in favor of a non-treating physician's contradictory opinion. *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). However, the ALJ need not accept the opinion of any medical source, including a treating medical source, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *accord Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The factors to be considered by the adjudicator in determining the weight to give a medical opinion include: "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. *Orn*, 495 F.3d at 631-33; 20 C.F.R. §§

404.1527(d)(2)(i)-(ii), 416.927(d)(2)(i)-(ii).

Contrary to Plaintiff's contention, the ALJ did in fact consider Dr. Nottage's September 10, 2005 opinion that Plaintiff could not return to her past work as a billing manager, but disregarded it because it was "outside of [Dr. Nottage's] area of expertise" and because it concerned an issue which fell within the sole discretion of the Commissioner. (AR at 39, fn. 2.) This was an appropriate reason under the Social Security regulations for rejecting Dr. Nottage's opinion that Plaintiff could not return to her former work as a billing manager. The ultimate determination of disability (*i.e.* whether a claimant can perform work in the national economy) rests solely with the Commissioner, and a physician's statement that a claimant is "unable to work" is not entitled to special weight. 20 C.F.R. 416.927(e); *see McLeod v. Astrue*, 640 F.3d 881, 884-85 (9th Cir. 2011) (ALJ not bound by opinion of treating physician with respect to whether claimant can work or to the ultimate issue of disability); *see also Tonapetyan*, 242 F.3d at 1148-49.

Furthermore, the ALJ reviewed and summarized Dr. Nottage's other records and accorded them "significant weight." (AR at 39.) The ALJ also incorporated additional restrictions into her RFC assessment based upon Dr. Nottage's findings regarding Plaintiff's need to avoid prolonged neck flexion and extension. (Id.) Thus, it is clear that the ALJ properly considered Dr. Nottage's opinions and incorporated them into the RFC assessment but merely declined to defer to Dr. Nottage's opinion that Plaintiff could not return to her past relevant work because that was an issue reserved solely to the Commissioner.

### 2. Dr. Michael Luciano

Plaintiff argues that the ALJ erred in failing to consider the opinion of Dr. Luciano. (Joint Stip. at 22.) On March 21, 2006, Dr.

Luciano, an orthopedic surgeon, provided a report in the context of Plaintiff's state workers' compensation case. (AR at 468-501.) Dr. Luciano concluded that vocational rehabilitation was indicated for Plaintiff based upon her job description and her symptoms and subjective complaints. (AR at 489.) Plaintiff contends that Dr. Luciano's finding that Plaintiff could not perform her past job based upon her impairments contradicts the ALJ's conclusion that Plaintiff could perform her past relevant work.

However, as discussed above, the ALJ was not required to credit Dr. Luciano's conclusion that Plaintiff could not return to her past work. Moreover, the ALJ cited Dr. Luciano's report while summarizing Plaintiff's medical history; however, the ALJ was not required to discuss the report at great length. *See Howard*, 341 F.3d at 1012. Finally, Dr. Luciano's prophylactic work restrictions for Plaintiff included avoiding prolonged neck flexion, very heavy lifting, repetitive at or above-shoulder-level work with the left shoulder, forceful pushing, power grasping with the left wrist and forceful activities with the right wrist. (AR at 489.) These restrictions are consistent with the ALJ's RFC assessment which limited Plaintiff's neck, shoulder and left arm motion. (AR at 37.) Accordingly, the ALJ properly considered Dr. Luciano's report and Plaintiff is not entitled to relief with respect to this claim of error.

### 3. Dr. Carmela Yacoob

Finally, Plaintiff contends that the ALJ failed to properly consider Dr. Yacoob's March 6, 2007 report in which she opined that Plaintiff was unable to work and in which she provided various restrictions on Plaintiff's ability to sit, stand, walk, lift, carry, use her hands and reach. (Joint Stip. at 25, citing AR at 650.)

The ALJ provided legitimate reasons for refusing to give Dr. Yacoob's March 6, 2007 opinion controlling weight, each of which are supported by substantial evidence in the record. First, the ALJ rejected the report because it was inconsistent with Dr. Yacoob's own records. The March 6, 2007 report restricted Plaintiff to only occasional power grasping, pushing and pulling, and fine manipulating with both her right and left hand. (AR at 650.) However, as noted by the ALJ, in opinions rendered in July 2006 and February 2008, Dr. Yacoob only precluded Plaintiff from prolonged use of the left shoulder and left hand. (AR at 38, citing AR at 324, 649.) The Commissioner may take into account whether a medical opinion is internally inconsistent in determining the weight to accord the evidence. *See* 20 C.F.R. § 404.1527(c)(2); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (holding that ALJ properly rejected physician's determination where it was "conclusory and unsubstantiated by relevant medical documentation").

Plaintiff argues that Dr. Yacoob's March 6, 2007 report is not necessarily inconsistent with Dr. Yacoob's July 2006 and February 2008 treatment records because the March 6, 2007 report focuses specifically on Plaintiff's manipulative limitations. (Joint Stip. at 25.) However, a review of the records finds that the ALJ's interpretation of the March 6, 2007 report as inconsistent is a reasonable interpretation of the evidence. *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1989) (noting that it is the responsibility of the ALJ to resolve conflicts and ambiguities in the medical record and determine the credibility of medical sources).

The ALJ also correctly refused to credit Dr. Yacoob's conclusion that Plaintiff was unable to work because it was outside the scope of Dr. Yacoob's expertise and was a decision reserved to the Commissioner.

(AR at 38.) *See McLeod*, 640 F.3d at 884-85.

Plaintiff next contends that the ALJ erred in failing to credit Dr. Yacoob's limitation of Plaintiff to lifting and carrying no more than five pounds. (Joint Stip. at 25.) Here, the ALJ properly relied upon the contrary opinions of the orthopedic consultative examiner, Dr. Bruce, Plaintiff's treating physician, Dr. Nottage, and the medical expert, Dr. Jensen, in determining Plaintiff's RFC for lifting and carrying. Contrary to Dr. Yacoob's limitation to lifting five pounds, Dr. Bruce determined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently. (AR at 713.) If a treating professional's opinion is contradicted by an examining professional's opinion, which is supported by different independent clinical findings, the Commissioner may resolve the conflict by relying on the latter. *See Andrews*, 53 F.3d at 1041; *see also Orn*, 495 F.3d at 632 (ALJ may reject opinion of treating physician in favor of examining physician whose opinion rests on independent clinical findings). Because Dr. Bruce's opinion was based upon his independent examination of Plaintiff, the ALJ properly relied upon Dr. Bruce's lifting restrictions.

In addition, the ALJ appropriately relied upon the opinion of Dr. Nottage, Plaintiff's treating physician, who concluded that Plaintiff would only be precluded from "very heavy lifting." (AR at 39, citing AR at 275.) The ALJ's RFC assessment with respect to Plaintiff's ability to lift and carry was also supported by the medical expert's opinion. After reviewing all of Plaintiff's medical records, Dr. Jensen testified that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently with the right arm and 10 pounds occasionally and less than 10 pounds frequently with the left arm. (AR at 65-66.) The ALJ adopted Dr. Jensen's lifting and carrying restrictions in her assessment of

Plaintiff's RFC. (AR at 37.) The ALJ was entitled to rely on the reviewing physician's findings, particularly when they were consistent with the other medical evidence in the record. The findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings. *Andrews*, 53 F.3d at 1041; *Magallanes*, 881 F.2d at 752.

Accordingly, because the ALJ provided legitimate reasons supported by the record for refusing to give Dr. Yacoob's March 6, 2007 opinion controlling weight, Plaintiff is not entitled to relief with respect to this issue.

**IV.  Conclusion**

For the reasons stated above, the decision of the Social Security Commissioner is **AFFIRMED** and the action is **DISMISSED** with prejudice.

DATED: January 9, 2013

_____
Marc L. Goldman
United States Magistrate Judge